UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- LONDON

LEWIS LYTTLE,

     Plaintiff,

v.

ROB FARLEY, *et. al.*,

     Defendants.

CIVIL NO. 6:16-114-KKC-HAI

<u>OPINION AND ORDER</u>

     This suit arises in the wake of an altercation that occurred in the parking lot of the Harlan Appalachian Regional Hospital between plaintiff Lewis Lyttle and several Kentucky State Police officers. Lyttle seeks to hold these officers liable for their actions and alleges eight claims[1] of relief under 42 U.S.C. § 1983 and Kentucky state law. Two of the officers, Lieutenant Jason Adams and Captain Phillip Burnett, move to dismiss (DE 56; DE 57) all of the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6). Because Lyttle's complaint does not state any plausible claims for relief against either Adams or Burnett, it is insufficient and cannot survive a motion to dismiss. Adams and Burnett's motions to dismiss (DE 56; DE 57) will be granted.

## I. BACKGROUND

     The facts, as construed in the light most favorable to Lyttle, *see Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), are as follows. On June 15, 2016, Trooper Jimmy Halcomb arrested Lewis Lyttle in the parking lot of Harlan Appalachian Regional Hospital, a small hospital located on the outskirts of Harlan, Kentucky (Amended Compl. ¶ 10). Trooper Halcomb placed Lyttle on the ground, where Lyttle remained for several minutes before another officer, Sergeant Rob Farley, arrived on the scene (Amended Compl. ¶¶ 11–12). Farley proceeded to exit

---

[1] Several individual "counts" appear to allege a few separate claims sounding in different law. For the present purposes, though, the Court will adopt Lyttle's construction.

his vehicle upon arrival, walked over to Lyttle, and slapped the Lyttle in the face with an open right hand (Amended Compl. ¶ 15). Farley then grabbed Lyttle, jerking Lyttle's right arm up into his back, and with Halcomb's assistance, brought Lyttle to his feet (Amended Compl. ¶ 16). Halcomb removed Lyttle's handcuffs at Farley's direction. After verbally taunting Lyttle, Farley grabbed Lyttle, now standing un-cuffed, kicked him in the torso, and slammed his head into the pavement (Amended Compl. ¶ 20). Around the same time, two more officers, Trooper Kevin Miller and Trooper Josh Howard, arrived on scene and joined in with Farley and Halcomb (Amended Compl. ¶¶ 19–22). Lyttle alleges that he remained non-combative during the assault (Amended Compl. ¶¶ 14, 19, 25).

After an unspecified time, the officers arrested Lyttle, put in him in the back of a police cruiser, and transported him to Harlan County Detention Center, where Lyttle contends that he was lodged without medical treatment for over forty-eight hours before he posted bond (Amended Compl. ¶ 26).

On August 1, 2016, Lyttle was indicted by a Harlan County grand jury (Amended Compl. ¶ 28). Months later, on January 13, 2017, Harlan Circuit Judge Kent Hendrickson dismissed the indictment after the Harlan County Commonwealth's Attorney, Stephen Parker Boggs, moved for its dismissal.

The present defendants, Adams and Burnett, are not accused of participating in the physical attack of Lyttle. Instead, Lyttle alleges that "[f]rom shortly after [his] arrest on June 15, 2016, until the execution of the Order of dismissal . . . Adams and Burnett knew or should have known that [he] was charged with crimes he did not commit," and that both Adams and Burnett, in their "supervisory capacity[ies]" conspired with the other officers involved in the incident "to wrongfully pursue [Lyttle's] prosecution and further criminal proceedings in spite of that knowledge" (Amended Compl. ¶ 30). Based on that accusation, Lyttle alleges claims against Adams and Burnett for: (1) supervisory liability under 42 U.S.C. § 1983; (2) civil

conspiracy to deprive under 42 U.S.C. § 1983; (3) malicious prosecution under 42 U.S.C. § 1983; (4) conspiracy to deprive Lyttle of his constitutional rights under state common law; (5) malicious prosecution under state common law; (6) intentional, reckless, or negligent infliction of emotional distress; and (7) negligence.

## II. DISCUSSION

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, "the plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Moreover, the allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]hen a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Further, in considering a Rule 12(b)(6) motion, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts as alleged. *See id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that, in reviewing a motion to dismiss, the district court

"must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "Thus, Rule 12(b)(6) essentially 'allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery.'" *Hall v. City of Williamsburg*, No. 6:16-304-DCR, 2017 WL 2274327, at *5 (E.D. Ky. May 24, 2017) (quoting *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

Both Adams and Burnett move to dismiss all claims as alleged against them, as each argues that Lyttle's complaint is insufficiently pled to survive. At this procedural stage, then, the sole issue before the Court is whether Adams and Burnett have shown that Lyttle's complaint fails to state a claim for relief against them. *See Wesley v. Campbell*, 779 F. 3d 421, 428 (6th Cir. 2015). Each claim for relief is addressed in turn.

## A. Constitutional Claims under 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Lyttle asserts two causes of action that concern actions taken under color of state law pursuant to § 1983. Those claims, however, must be dismissed because Lyttle fails to allege sufficient factual matter to state a plausible claim for relief.

### i. Supervisory Liability under 42 U.S.C. § 1983

In Count II, Lyttle names Adams and Burnett (along with Farley) as supervisory personnel with oversight responsibility for and personal involvement in the instruction, supervision, and discipline of the other defendants in this action (Amended Compl. ¶ 42). Lyttle charges that Adams and Burnett "knew or should have known that their subordinate officers/investigators were maliciously prosecuting [Lyttle], fabricating evidence, pressuring

4

inculpatory witness statements, [and] suppressing and concealing material exculpatory and impeachment evidence [and] violating there (sic) ongoing affirmative obligation to come forward with the truth . . . ." (Amended Compl. ¶ 42). Moreover, Lyttle asserts that Adams and Burnett failed to supervise their subordinates involved in the arrest (Amended Compl. ¶ 43).

A supervisor cannot be held liable simply because he or she was tasked with overseeing a subordinate who violated the constitutional rights of another. *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Consequently, a mere failure to act will not suffice to establish supervisory liability. *Id.* There must be a "direct and causal link between the acts of the individual [government employees] and the supervisory defendants." *Hays v. Jefferson Cty.*, 668 F.2d 869, 872 (6th Cir. 1982). There must be proof that a government actor, through their "deliberate conduct," was "the moving force behind the injury alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (quoting *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 751 (6th Cir. 2015)). "[A]t a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242 (internal quotations and citations omitted); s*ee also Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.") (internal quotations and citations omitted).

A claim for supervisory liability under § 1983 cannot stand against Adams or Burnett. Lyttle has failed to pass the minimum threshold required to state a claim for supervisory liability because none of his allegations are factually supported. Lyttle alleges no facts that plausibly show how Adams or Burnett were involved in the arrest, how they acted inappropriately, or what actions they took to participate in or acquiesce in the actions of others. Lyttle's complaint, instead, insufficiently relies upon conclusory statements to somehow link

Adams and Burnett—seemingly by virtue of the positions they hold—to the alleged wrongdoing committed by the other officers during the arrest and subsequent prosecution. Merely stating that the officers "authorized" or "approved" or "facilitated" does not make it so. Absent any factual allegations indicating how Adams or Burnett did any of these things, the Court has no way of testing the plausibility of any of the allegations seeking to hold these officers liable. Therefore, Lyttle has "not nudged [his] claim across the line from conceivable to plausible" and his claim against both defendants must fail. *Twombly*, 550 U.S. at 570.

ii. Conspiracy under 42 U.S.C. § 1983

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)). To establish a conspiracy claim, a plaintiff must show that: "(1) a single plan existed, (2) defendants shared in the general conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the plaintiff's injury." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)) (internal quotation marks omitted). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (internal citations and quotations omitted).

In Count IV, Lyttle asserts, in full, that Adams and Burnett, along with the other defendants, acted in concert "to facilitate and carry out numerous overt acts, including without limitation, intentional suppressing or concealing exculpatory and impeachment evidence, fabrication of evidence, pressuring inculpatory witness statements, violating their ongoing affirmative obligation to come forward with the truth of their own misconduct, maliciously and

purposefully failing to produce evidence of [Lyttle's] innocence and failing to adequately investigate" (Amended Compl. ¶ 60).

Much need not be said on this count. Lyttle does nothing but make blanket assertions about the existence of a conspiracy and tie these assertions to a generic list of supposed bad acts committed by Adams and Burnett. Lyttle's complaint does not allege how Adams or Burnett were involved in his prosecution or how they coordinated with others to pressure witnesses or to carry out any other act. Nothing in the complaint asserts that Adams or Burnett were involved in this prosecution at all, aside the mere conclusion that they were. And, moreover, even if there were sufficiently pled unconstitutional conduct, there are no factual allegations "from which to infer that the defendants acted in concert in so doing." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Lyttle's complaint seeks to implicate these defendants in a conspiracy based on nothing but "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Like his supervisory liability claim, Lyttle has not put any factual flesh on the bones of a legal conclusion. *Id*. ("[W]hen a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). Thus, Lyttle's conspiracy claim is not sufficient to survive the motion to dismiss stage.[2]

iii. Malicious Prosecution Under 42 U.S.C. § 1983

In Count V, Lyttle alleges that all of the defendants, including Adams and Burnett, maliciously prosecuted him. To state a claim for malicious prosecution in federal court, the plaintiff must allege: (1) that a criminal prosecution was initiated and the defendants made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable

---

[2] Lyttle seemingly relies on this Court's previous Opinion & Order—which permitted Lyttle to amend his complaint to include Adams and Burnett and to add, among other claims, this conspiracy claim—to argue that the Court implicitly acknowledged the plausibly of his conspiracy claim when it state that the claim was "not on-its-face destined to fall victim to a motion to dismiss." (DE 64, at 8) (citing Opinion & Order, DE 36, at 6). However, the purpose of allowing the amended complaint was to enable the Court to fully consider the issue with the benefit of briefing before making a dispositive ruling. Perhaps the Court's prudence was overwrought.

cause to prosecute; (3) that the plaintiff suffered a deprivation of liberty; and (4) that the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citations omitted).

Lyttle's claim fails on prong one and two because the complaint contains no facts to support, directly or by inference, the allegation that Adams or Burnett "initiated" or "influenced" or "participated" in the decision to prosecute, or to give a hint as to how Adams or Burnett knew or should have known about the lack of probable cause in Lyttle's case. Lyttle does not allege facts that indicate that it was the decision of Adams or Burnett to prosecute him. He does not allege facts that indicate that Adams or Burnett provided any falsified statement or manufactured evidence or covered up any evidence (Compl ¶¶ 65, 66). There are no allegations that either officer took statements, conducted interviews, or testified at a hearing. Lyttle protests that "Burnett did take part in the continuation of [his] prosecution by participating in the concealment of exculpatory evidence . . . ." (DE 64, at 10). Tellingly, however, Lyttle does not point to anything in the complaint—aside from the statement that Burnett (and Adams), in fact, did these things—to make such a claim plausible. Again, like the other claims, the complaint offers nothing but a conclusory statement that Adams and Burnett acted unconstitutionally. While an officer can potentially be held liable for malicious prosecution by acting in a way that aids the decision to prosecute, that participation cannot be "passive[] or neutral[]." *Sykes*, 625 F.3d at 309 n.5. The complaint simply does not allege facts that provide any support to make Lyttle's malicious prosecution claim plausible. Without more, the Court need not engage in an analysis of the remaining requirements needed to make out a sufficient malicious prosecution claim. Lyttle's claim must be dismissed.

### B. State Law Claims

As detailed below, Lyttle's state law claims are fatally flawed in the same way his federal claims are. Each of them will addressed and dismissed in turn.

i. Conspiracy and Malicious Prosecution under State Common Law

In Count IV and Count V, Lyttle alleges claims of conspiracy and malicious prosecution under state law, respectively. These state law claims differ from federal law in some respects, but those difference do not save Lyttle's state claims from the same fate as his federal claims.

To prevail on a civil conspiracy claim under Kentucky law, a plaintiff must show an "unlawful/corrupt combination or agreement" between the conspirators "to do by some concerted action an unlawful act." *See Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995), *overruled on other grounds*, *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229 (Ky. 2013). However, civil conspiracy is not a free-standing claim in Kentucky. "[I]t merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys.*, Inc., 515 F. App'x 451, 458–59 (6th Cir. 2013) (quoting *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, Nos. 2008-CA-002389-MR, 2009-CA-000026-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010)). Therefore, a civil conspiracy claim not based on a tort cannot survive as a matter of law. *Flint v. Coach House, Inc.*, No. 2012-CA-000580, 2013 WL 869649, at *4 (Ky. Ct. App. March 8, 2013) (holding that because the plaintiff had not stated a tort claim, "a cause of action for civil conspiracy cannot lie as a matter of law"); *Stonestreet Farm*, 2010 WL 2696278, at *14 ("Stonestreet's claim of civil conspiracy thus has no tort to be based upon and cannot survive as a matter of law.").

Though there is some question as to what underlying tort Lyttle intends to plead, which warrants dismissal on that basis alone, what is clear is that, like his federal conspiracy claim, the complaint lacks sufficient factual allegations to support a plausible state law conspiracy claim. The complaint does not allege when, where, or how Adams or Burnett committed a tortious act, how they acted in concert, or if they even had a common plan to commit an unlawful act. Thus, Lyttle has failed to allege sufficient factual matter to state a plausible civil conspiracy claim under Kentucky law.

A malicious prosecution claim under Kentucky law requires the plaintiff to allege the same elements as the federal cause of action and to also sufficiently allege that the defendant acted with malice. *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016); *see also Sykes*, 625 F.3d at 309 ("This circuit has never required that a plaintiff demonstrate 'malice' in order to prevail on a Fourth Amendment claim for malicious prosecution, and we join the Fourth Circuit in declining to impose that requirement."). Lyttle does not allege sufficient facts to state a plausible claim for a federal malicious prosecution action. Because Lyttle's claim fails under the federal standard—which contains fewer elements—it necessarily fails under Kentucky law, too. Thus, for the same reasons stated above, Lyttle's state law claim for malicious prosecution fails.

ii. Intentional, Reckless, or Negligent Infliction of Emotional Distress

In Count VI, Lyttle alleges a claim for "intentional, reckless, or negligent infliction of emotional distress." (*See* Amended Compl. ¶ 77). This claim is based on allegations that all the defendants, including Adams and Burnett, "intentionally, recklessly, and/or negligently directly and proximately and/or conspired to have [Lyttle] to be (sic) falsely arrested, maliciously prosecuted and artificially and deliberately prolonged [his] criminal proceedings knowing the allegations were false." (Amended Compl. ¶ 77). The defendants assert that the claims against them in their individual capacities for intentional infliction of emotional distress and negligent infliction of emotional distress should be dismissed because it is a "gap-filler" tort that is available only when a plaintiff cannot recover for his emotional distress under traditional tort theories.

Under Kentucky law, a plaintiff claiming intentional infliction of emotional distress must allege facts that establish: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable such that it offends generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Gilbert v. Barkes*, 987 S.W.2d

10

772, 777 (Ky. 1999). The first element is only satisfied if the plaintiff alleges that the "actor had the specific purpose of causing emotional distress (intentional) or intended a specific conduct and knew or should have known that it would cause *emotional distress rather than a personal (physical) injury* (recklessness)." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (citation omitted) (emphasis in original). This element alone ends the Court's inquiry.

"When the claim of emotional distress is a supplement to another tort claim . . . the burden of showing sole intent cannot be met." *Lovins v. Hurt*, No. 11-216-JBC, 2011 WL 5592771, at *3 (E.D. Ky. Nov. 16, 2011) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)). Lyttle has attempted to plead a claim of malicious prosecution. That claim allows for recovery of emotional distress damages. *See Carter v. Porter*, 617 F. Supp. 2d 514, 520 (E.D. Ky. 2008) (citing *McCoy v. RWT, Inc.*, Nos. 2003-CA-002177-MR, 2003-CA-002241-MR, 2005 WL 1593651, at *5 (Ky. Ct. App. July 8, 2005), *rev'd on other grounds*, 244 S.W.3d 44 (Ky. 2008)). Lyttle has alleged that Adams and Burnett intended to cause or played a role in his wrongful arrest and prosecution. His complaint seeks recovery for more than just emotional damages. All of which combine to show that Lyttle's intentional infliction of emotion distress fails as a matter of law.

Moreover, even if this theory were somehow legally sufficient, Lyttle's complaint does not even come close to providing the requisite factual basis to state a plausible claim for relief under his own theory. The complaint sets forth no facts that plausibly allege that Adams or Burnett solely intended or acted recklessly to cause Lyttle emotional distress.

iii. Negligence, Gross Negligence, or Recklessness

In Count VIII, Lyttle alleges a claim of state law negligence. Under Kentucky law, negligent infliction of emotional distress is analyzed in accordance with common-law negligence." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012)A plaintiff claiming negligence or negligent infliction of emotional distress must allege: "(1) the defendant owed a duty of care to

the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Id.* Lyttle's claim for negligent infliction of emotional distress relies on the same allegations as his claim for intentional infliction of emotional distress. As a result, it fails too.

While Lyttle is permitted to plead in the alternative, an alternative theory is still subject to the same pleading requirements. Lyttle has failed to allege any facts that would support his conclusory allegations that Adams and Burnett acted negligently. Indeed, Lyttle merely recites some of the elements of the cause of action, stating that Adams and Burnett "breached their duty" by conspiring to seek his prosecution, that they "were negligent/grossly negligent/reckless of their respective duties" and that he was "egregiously harmed" as a result. (Compl 92). The Court is not bound to accept legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.[3] As a result, Lyttle's claims for negligence also fails.

### III. CONCLUSION

*Twombly* and *Iqbal* impose both legal and factual demands on complaints. Under these pair of cases, in part, the "sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). *Twombly* and *Iqbal* instruct that, to be plausible, a complaint must consist of more than speculation and conclusory statements of alleged wrongdoing. In other words, "a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *Id.* This requirement is in place to "prevent[] plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—when there is no reasonable likelihood that they can construct a claim

---

[3] Furthermore, to the extent that Lyttle's negligence claim encompasses his malicious prosecution claim, such a negligence claim cannot lie because "a plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim." *Tunne v. Paducah Police Dep't*, No. 5:08CV-188-R, 2010 WL 323547, *11 n.4 (W.D. Ky. Jan. 21, 2010) (citing *Hill v. Willmott*, 561 S.W.2d 331, 334 (Ky. Ct. App. 1978)).

from the events related in the complaint." *Id.* (citing *Twombly*, 550 U.S. at 558). Lyttle's complaint as alleged against Adams and Burnett underscores this functional purpose. The allegations in Lyttle's complaint are insufficient to state any plausible claim of relief under any of the legal theories presented. Accordingly, defendant Adams and Burnett's motions to dismiss for failure to state a claim (DE 56; DE 57) are **GRANTED**.

    **IT IS SO ORDERED**.

Dated August 9, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY